DAVID FRANK, administrator, *vs.* ALEXANDER C. DUNNING.

Suffolk.    December 3, 1958. — January 9. 1959.

Present: WILKINS, C.J., RONAN, WILLIAMS, COUNIHAN, &
WHITTEMORE, JJ.

*Negligence*, Gas appliance, One owning or controlling real estate.    *Evidence*, Admissions and confessions.

In an action to recover for the death of a woman caused by inhalation of gas escaped from a gas refrigerator, a statement by the defendant when accused of tinkering with the refrigerator, "I am sorry.  I didn't think anything like this would ever happen," could have been found to have been an admission by the defendant that he had been doing something to the refrigerator which led to the escape of gas.  [301]

Evidence in an action that the defendant, the owner of an apartment house, had been present in a vacant third floor apartment one afternoon for half an hour when gas began to escape from a gas refrigerator in the apartment, that until then the refrigerator had been in good mechanical condition, that he was interested in clearing it of frost and collected ice and had attempted to do so some weeks before and had been then warned of danger and to desist in his attempts, and that he had been doing something to the refrigerator the afternoon in question which led to the escape of gas warranted a finding of negligent conduct on his part toward an occupant of the second floor apartment whose death was caused by inhalation of the gas.  [301]

TORT.    Writ in the Superior Court dated December 6, 1955.

The action was heard by *Brogna,* J.

*Salvatore F. Stramondo,* for the defendant.

*Ralph F. Martino,* for the plaintiff.

RONAN, J.   This is an action of tort by the plaintiff to recover for the conscious suffering and death of the intestate, his wife, which resulted from the escape of gas from a gas refrigerator in an apartment other than the one occupied

by the plaintiff and his family in the defendant's apartment house. The case was referred to an auditor and was heard by a judge without a jury on the auditor's reports together with the oral testimony of the defendant. The judge in accordance with the auditor's reports found for the plaintiff. The case is here upon exceptions to the judge's finding and to his denial of requests that the evidence did not warrant a finding that the defendant was negligent and that the subsidiary facts found by the auditor did not warrant a finding that the defendant was negligent. No question is raised as to the amount of damages awarded.

In view of the defendant's contentions, we summarize the auditor's finding pertaining to liability. The plaintiff, his wife, and his daughter lived in an apartment on the middle floor of a three story apartment house owned and maintained by the defendant. Each apartment was furnished with heat, a refrigerator, hot water and janitor service. A central refrigeration plant, which was connected with the refrigerator in each apartment, was located in the cellar. In August, 1955, the third floor apartment became vacant and remained so until sometime after October 9, 1955, the date of the accident. The vacated apartment, like the others, contained a refrigerator. In September, 1955, the defendant hired an independent contractor, one Eskey, to paint, paper the walls and do some carpentry work in the vacant third floor apartment. About two or three weeks prior to October 9, 1955, the plaintiff saw the defendant trying to release ice and frost which had collected in the refrigerator in the vacant apartment, and warned him to call an authorized serviceman, and said, "you are playing with fire." The auditor denied a motion by the defendant's counsel that this evidence be struck out.

At about 1 P.M. on October 9, 1955, the defendant entered the third floor apartment in which Eskey was working. He did so for the purpose of checking and examining the work which the latter had done. There was no evidence before the auditor of what the defendant did while there, and at the trial the defendant testified "that he had at no time

applied any force himself to the refrigerator." The refrigerator and the central refrigeration system were in good mechanical condition at the time and at about 1:30 P.M., while the defendant and Eskey were in the apartment, the refrigerator therein began to leak sulphur dioxide gas in heavy volume, forcing the pair to flee. The plaintiff's family was in the apartment below; the deceased and one of her daughters were in the kitchen thereof. The daughter smelled gas and started to cough; the deceased likewise started to cough and also to breathe with difficulty. Then Eskey, in flight, loudly knocked on their door and shouted, "Gas, all out." The occupants "made a hasty exit . . . amid considerable fear and excitement." With the assistance of her son-in-law and a daughter, the deceased was able to leave the apartment and descend the stairs from the second floor to the outer hall on the first floor of the building. Within a short time she fainted and remained unconscious for about half a minute. Her son-in-law, a physician, laid the deceased on the floor. She was then coughing and vomiting. The auditor found that one of the plaintiff's daughters then turned to the defendant, who was standing near by, and said, "Look what happened, Mr. Dunning. You were told a week ago not to tamper with the refrigerator. You were tinkering with that refrigerator. You were told to leave that refrigerator alone. Look, see my mother," to which the defendant replied, "I am sorry. I didn't think anything like this would ever happen." It does not appear from the record that the defendant denied that this conversation took place or explained away its import either at the hearing before the auditor or at the trial itself.

At the time of the accident the deceased was sixty-six years old and was suffering from heart disease, from which she had been suffering for twelve years prior to the accident.

When members of the fire department arrived on the scene at about 2 P.M. they administered oxygen to the deceased and forced artificial respiration. After the refrigeration plant had been shut off and the fumes were dissipated, police officers carried her in a litter to her bedroom.

There was no dispute from the medical testimony that the death of the intestate was due to the effect of the inhalation of the fumes upon her aggravated cardiac condition.

The auditor found as ultimate facts "that the gas was caused to escape as a result of some manual act of the defendant . . . in all likelihood . . . the defendant's attempt to rid the refrigerator of frost or collected ice," and "that the escape of said gas from the said refrigerator was the result of the defendant's negligent conduct."

Since the supplementary report of the auditor showed the defendant to have been present in the vacant apartment from one o'clock until the gas began to leak at about one-thirty o'clock, the judge was not required to believe his testimony that he was not then present when the fumes were first discovered. He and Eskey were in the vacant apartment when the gas began to escape. Eskey was the defendant's contractor but was hired only to paint and paper the apartment and to do some carpentry work. The refrigerator was found by the auditor to have been in good mechanical condition up to the moment gas began to escape. The only person interested in clearing it of frost and collected ice was the defendant. He was seen making an attempt to do this two weeks before, and was warned to desist; and his equivocal answer to the daughter of the intestate, when she accused him of tinkering with the refrigerator, could have been found to be an admission that he had been doing something to the refrigerator which led to the escape of gas. This was enough to support the conclusion that the escape of gas was the result of the defendant's negligent conduct.

*Exceptions overruled.*